**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **CR-03-BE-0530-S** |
| | ) | |
| **RICHARD M. SCRUSHY,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This matter is before the court on Defendant's Motion to Suppress (doc. 243) and Defendant's Amended Motion to Suppress Evidence (doc. 318).  Both parties have thoroughly briefed the issues (see, docs. 243, 261, 284, 318, 336, 338, 340), and the court conducted an evidentiary hearing on December 21, 2004.

Based upon the submissions, the evidence presented in court, and an analysis of the applicable law, the court concludes that the Defendant's Motions are due to be **DENIED**.  The court concludes that the Defendant's right to privacy guaranteed under the Fourth Amendment to the United States Constitution was not breached by the search of HealthSouth's corporate headquarters conducted by the Government on March 20, 2003.  The court further determines that HealthSouth's attorneys had actual authority to consent to the search of the HealthSouth premises on March 20, 2003.  Alternatively, the court finds that HealthSouth's attorneys had apparent authority to consent to the search on March 20, 2003.

## I. POSITIONS OF THE PARTIES

The Defendant's motions challenge the legality of the March 20, 2003, search of the Defendant's private office suite and other areas occupied or used by him at the HealthSouth headquarters building.  Defendant asserts that his rights of privacy under the Fourth Amendment of the United States Constitution were breached by this search.

The search on March 20, 2003, was conducted not under warrant but pursuant to consent given by various attorneys representing HealthSouth.  The Defendant does not challenge the search conducted pursuant to a warrant on March 18, 2003, that did not include these areas occupied or used by Mr. Scrushy.

The Defendant contends he had an expectation of privacy in his office suite; the HealthSouth attorneys did not have his authority to consent to the search of his office space because HealthSouth did not have common access to his office suite; and, therefore, no actual authority for the consent to search his office and related spaces existed.  The Defendant further contends that the attorneys for the Government should have known that the HealthSouth attorneys did not have the authority to consent to a search of Mr. Scrushy's private office space, making the Government's assertion of apparent authority invalid as well.

The Government argues that HealthSouth's attorneys had actual authority to consent to the search of HealthSouth's premises on March 20, 2003, and, alternatively, that HealthSouth's attorneys had apparent authority to consent to the search of HealthSouth's premises on that date.  In opposition to the Defendant's Motion, the Government submitted, *inter alia*, various affidavits of the attorneys involved in consenting to the search on March 20, 2003 (Gov't Exs. 5, 6, 7, 12 admitted into evidence at December 21, 2003, hearing) and the written consent to search signed by attorneys for HealthSouth (Gov't Ex. 3).

II.  FINDINGS OF FACTS

After considering all materials submitted, hearing testimony, and receiving additional exhibits in the course of the hearing, the court finds the following facts:

-2-

1.  Mr. Scrushy had a subjective expectation of privacy in the office space he and his staff occupied on the fifth floor of the HealthSouth headquarters.  Only a few people in addition to Mr. Scrushy had access to this space, including the Director of Corporate Security James Goodreau, the Assistant Director of Security Les Moore, and Mr. Scrushy's assistant Mary Esclovon.  This office space was not generally accessible to anyone without Mr. Scrushy's consent.  When repairs or cleaning needed to be done, his assistant or a security officer admitted those people and remained in the office while they were present.

2.  Mr. Scrushy likewise had a subjective expectation of privacy in the computers in his offices.  These computers were password protected, and only Mr. Scrushy knew those passwords.  When any repairs or updates had to be made on those computers, Mr. Scrushy had to be present to allow access to the computers.

3.  William Horton was executive vice president and corporate counsel for HealthSouth Corp.  He hired outside counsel from Fulbright & Jaworski, (Richard Beckler and Joseph Walker) and Bradley Arant Rose & White (Jack Selden).  Mr. Horton authorized them to cooperate with the Government's investigation of HealthSouth.  Mr. Beckler is an experienced white-collar crime defense attorney, and Mr. Walker worked for the Department of Justice for a number of years.  These attorneys had been hired by HealthSouth in the summer of 2002 to represent it in a Securities Exchange Commission investigation and were still employed in that representation on March 20, 2003.  The HealthSouth Board of Directors and Mr. Scrushy approved retaining these attorneys.

4.   The attorneys representing HealthSouth in the SEC investigation knew that a criminal investigation of HealthSouth by the United States Department of Justice was a realistic possibility.

5.   On March 18, 2003, the FBI conducted a search of selected portions of the HealthSouth headquarters pursuant to a search warrant.

6.   Attorneys representing HealthSouth–Beckler, Walker, and Selden–met with representatives from the Department of Justice and the United States Attorney's office on March 19, 2003. The attorneys for the Government told the HealthSouth attorneys that the corporation was "on the bubble," meaning that the decision whether to make HealthSouth a target of the investigation had not been made (Transcript, Dec. 21, 2004, hearing, pp.136, 139).  The attorneys for HealthSouth knew the corporation and its senior officers were potential criminal defendants and that its level of cooperation with the Government could affect on which side of the bubble HealthSouth would land (Tr., p. 139).

7.   In the March 19, 2004, meeting, the HealthSouth attorneys told the Government attorneys that the corporation wanted  to continue to cooperate with the Government in its investigation.  As a result of these discussions, the HealthSouth attorneys executed a written consent permitting a complete search of various places at the headquarters building, including Mr. Scrushy's office, computers, and other areas in which he had a subjective expectation of privacy (Gov't Ex. 3).[1]

---

[1] The consent permitted "a complete search of: the offices, workrooms, secretarial spaces, file rooms, + filing cabinets of Richard Scrushy, William Owens, and Weston Smith, including but not limited to all laptop + desktop computers, docking stations, and all hard drives contained therein.  Documents moved into Ken Livesay's office on or after 03/18/03; Documents stored in a storage room next to Kathy Edwards' office."  Gov't Ex. 3.

8.  No one at the meeting discussed Mr. Scrushy's privacy interest, nor did anyone contact Mr. Scrushy or his attorney to obtain his consent to the search.

9.  The attorneys who consented to the search of Mr. Scrushy's office did not represent Mr. Scrushy, nor did they have any authority from Mr. Scrushy to consent to the search of his office.

10.  The attorneys did, however, have authority from HealthSouth to enter into the consent to search.  Mr. Horton, as executive vice president and corporate counsel, had the authority to hire counsel for HealthSouth and to instruct them to cooperate with the Government.  The Defendant presented nothing at the hearing nor in written submissions challenging Mr. Horton's authority or the authority of the outside counsel to consent to the search on behalf of HealthSouth.  Mr. Horton, as general counsel, testified that it had never occurred to him that Mr. Scrushy would not be subject to the policies that applied to all employees.

11.  At the time of the search, HealthSouth had two policies in place that affect the issue before the court: "Pulling the Wagon–Integrity in Action," HealthSouth Corporation Standards of Business Practice © 1997 (Gov't Ex. 8), and "HealthSouth Information Security Internet/E-Mail Compliance Policy," August 6, 2002, version, (Gov't Ex. 13).  "Pulling the Wagon" begins with an introductory letter signed by the Defendant as Chairman and CEO.  On its first page, the Internet Compliance Policy states, "In this document, the term 'employee' shall apply to employees, contractors, temporaries,

vendors, consultants, physicians, etc."[2]  Neither of these documents exempt any

HealthSouth employees from their provisions.

12.  Mr. Scrushy was a HealthSouth employee at the time of the search.

13.  The August 6, 2002, version of the Information Security Internet/E-Mail

Compliance Policy specifically states in part:

This form **applies to all personnel** using the HEALTHSOUTH network.

Gov't Ex. 13, p.1(emphasis in original).

HEALTHSOUTH designated security personnel reserve the **right to access and monitor all messages and files on any HEALTHSOUTH computer**.

*Id.* (emphasis added).

**Every HEALTHSOUTH employee, regardless of status**, must comply with the information security policies found in this and related information security documents.

*Id.* at 2 (emphasis added).

All employees wishing to use a HEALTHSOUTH computer system must sign this compliance statement prior to being issued a user id or access to any system.

*Id.*

**All data and messages** composed, sent or received remain the **property of HEALTHSOUTH** and are **subject to review** by authorized ITG personnel.

*Id.* at 3 (emphasis added).

Personal computers, and the software loaded onto them, are HEALTHSOUTH assets.

*Id.* at 4.

---

[2] An August 18, 2003, version was also admitted and uses the same definition (Gov't Ex. 9, p. 1).

> To ensure compliance with HEALTHSOUTH internal policies, as well as applicable laws, regulations, and to ensure employee safety, **HEALTHSOUTH management reserves the right to monitor, inspect, and/or search at any time all HEALTHSOUTH information systems. This examination may take place without the consent, presence, or knowledge of the involved employees**.  The information systems subject to such examination include, but are not limited to, electronic mail system files, personal computer hard drive files, voicemail files, printer spool files, fax machine output, desk drawers, and storage areas.  All searches of this nature will be conducted after the approval of the ITG Information Security Director.  Since HEALTHSOUTH's computers and networks are provided for business purposes only, **employees should have no expectation of privacy associated with the information they store in or send through these information systems.**  HEALTHSOUTH management additionally retains the right to remove from its information systems any material it views as offensive or potentially illegal.

*Id.* at 5 (emphasis added).

14.  The "Pulling the Wagon" policy states in part:

> We understand our **work areas** (desks, cubicles, etc.) are the **property of HEALTHSOUTH**, and as such, are **subject to search given reasonable suspicion of wrongdoing.**

Gov't Ex. 8, p. 13 (emphasis added).

15.  Although the Government did not produce any acknowledgment form from Mr. Scrushy, the Defendant presented no evidence that he was *not* subject to these policies as an employee of HealthSouth.

16.  On at least one occasion, James Goodreau, HealthSouth's security director, had used the internet security policy to access the private e-mail of a director.  (Tr., pp. 269-272.)

17.  The consent to search executed by HealthSouth attorneys focused on locating evidence relating to criminal conduct directly involving HealthSouth.

-7-

18.  At one point during the search on March 20, 2003, Mr. Walker, one of HealthSouth's attorneys, advised Department of Justice attorney Richard Smith that any questions regarding Mr. Scrushy's expectations of privacy would have to be addressed between the Government and Mr. Scrushy.  (Tr., p. 181.)

III.  APPLICABLE LAW AND HOLDINGS

A.  Fourth Amendment Principles

The Fourth Amendment to the United States Constitution guarantees "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures."  United States Constitution, Amendment IV.  Under the Fourth Amendment, searches and seizures conducted without a warrant are *per se* unreasonable, unless the Government can establish that a warrantless search falls within one of the few specifically established and narrowly defined exceptions to the general warrant requirement.  *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993); *Thompson v. Louisiana*, 469 U.S. 17, 19-20, 83 L. Ed. 2d 246, 105 S. Ct. 409 (1984)(per curiam); *Katz* v. *United States*, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967); *United States v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995)

Valid consent by an authorized party provides such an exception and is the exception claimed by the Government in this case.  See, *United States v. Matlock*, 415 U.S. 164, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974).  In absence of a warrant, law enforcement officers may nevertheless conduct a constitutionally permissible search by obtaining a valid consent to search.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93

S. Ct. 2041, 2045, 36 L. Ed. 2d 854 (1973).  The Government has the burden of proving the consent was properly authorized.  *Id.*

B.  Expectation of Privacy

A defendant may challenge a warrantless search by showing violation of his Fourth Amendment rights.  *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S. Ct. 469, 472, 143 L. Ed. 2d 373, 379 (1998).[3]  The "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place."  *Carter*, 119 S. Ct. at 472 (quoting *Rakas*, 439 U.S. 128, 143, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978).

A defendant may establish the legitimacy of the expectation of privacy by showing a subjective expectation of privacy and societal acceptance of this expectation as objectively reasonable.  *California v. Ciraolo,* 476 U.S. 207, 211, 106 S. Ct. 1809, 1811, 90 L. Ed. 2d 210 (1986)(citing *Katz v. United States*, 389 U.S. 347, 360, 88 S. Ct. 507, 516, 19 L. Ed. 2d 576 (1967)(Harlan, J., concurring)).  "[The] test of legitimacy is not whether the individual chooses to conceal assertedly 'private' activity.' Rather, the correct inquiry is whether the Government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment."  *Oliver v. United States,* 466 U.S. 170, 182-83, 104 S. Ct. 1735, 1743, 80 L. Ed. 2d 214, 227 (1984).

A defendant must further show a reasonable expectation of privacy in both the items seized and the areas searched.  *United States v. Salvucci*, 448 U.S. 83, 93, 100

---

[3] The issue of Fourth Amendment infringement in the case at bar is one of substantive law rather than one of standing.  *See, Rakas v. Illinois*, 439 U.S. 128, 143-144, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978).  In the case at bar, the issue of standing was not challenged.

S. Ct. 2547, 2553, 65 L. Ed. 2d 619 (1980).  In evaluating the legitimacy of an expectation of privacy, a court must consider where the search took place.  The reasonable expectation of privacy on commercial premises is "different from, and indeed less than, a similar expectation in an individual's home."  *New York v. Burger*, 482 U.S. 691, 700, 107 S. Ct. 2636, 96 L. Ed. 2d 601 (1987); *accord, United States v. Chaves*, 169 F.3d 687, 691 (11th Cir. 1999)(relying on both *Carter* and *Berger*).  Nonetheless, an employee may have a legitimate expectation of privacy in the workplace under certain circumstances.  See e.g., *O'Connor v. Ortega*, 480 U.S. 709, 718-719, 107 S. Ct. 1492, 94 L. Ed. 2d 714 (1987); *Mancusi v. DeForte*, 392 U.S. 364, 369, 88 S. Ct. 2120, 20 L. Ed. 2d 1154 (1968).

"[T]he question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis."  *O'Connor*, 480 U.S. at 718, 107 S. Ct. 1492.[4]   A legitimate expectation of privacy "by definition means more than a subjective expectation of not being discovered."  *United States v. Whaley*, 779 F.2d 585, 590 (11th Cir. 1986), *cert. denied,*  479 U.S. 1055, 107 S. Ct. 931, 93 L. Ed. 2d 982 (1987) (quoting *Rakas v. Illinois*, 439 U.S. at 143, n.12, 99 S. Ct. 430 at n.12, 58 L. Ed. 2d at 401, n. 12).  Assessing the legitimacy of a privacy expectation necessarily entails a balancing of interest.  No single factor is determinative.  *Oliver*, 104 S. Ct. at 1740.

---

[4] The need for case-specific review is particularly essential when third-party consent is at issue, because third-party consent involves both questions of fact and law.  The law applicable to the validity of consent under the Fourth Amendment has developed in widely different contexts.  The end result is that language applicable in one situation may not be relevant to another.  The joint access of cohabitants of an apartment has little relationship to hotel rooms, which in turn is generally irrelevant to the questions related to a business enterprise and workplace privacy.

In the case at bar, the Defendant clearly had a subjective expectation of privacy in his office suite.  He had consistently and successfully tightly limited and controlled access by others to his work spaces and computers.  Defendant argues that, therefore, his expectation of privacy was legitimate.  This argument ignores the existence of the authority of his employer HealthSouth to override the access limitations Defendant had imposed.  The inquiry is whether the  Defendant's subjective expectation of privacy was legitimate or reasonable in light of the existing circumstances, including company policies and authority.  The question is further not whether the employer's policy had ever actually been invoked with respect to the Defendant's particular individual work space, desk, or computer, but whether the Defendant's subjective expectation is subordinate to the policy of his employer.[5]

On March 20, 2003, the day of the search, HealthSouth had in place two long-standing policies published to the employees regarding its right to search the work spaces and electronic devices of any and all HealthSouth employees on its property--"Pulling the Wagon–Integrity in Action," (Gov't Ex. 8) and "HealthSouth Information Security Internet/E-Mail Compliance Policy," (2002 Version, Gov't Ex. 13).  The "Pulling

---

[5]The Defendant's construction of the policy would produce an anomalous result.  If the Defendant were correct, any employee of HealthSouth could have prohibited HealthSouth from enforcing its policy through extensive efforts to secure individual privacy.  However, any HealthSouth employee could not padlock his door and assume HealthSouth was thereafter barred from conducting a search pursuant to its written policy.  Moreover, the Defendant's construction of the policy and the authority derived from that policy would require that his office space had been routinely searched or accessed by security personnel or other employees before the company's consent to a search would be valid.

the Wagon" policy statement included an introductory letter from the Defendant as Chairman of the Board and CEO of HealthSouth.[6]

Defendant argues that the policies were not applicable to him. The policies are broad and expressly warn that an individual expectation of privacy is unwarranted regarding the corporate premises, network, and equipment. In light of the publications and the complete absence of any evidence of record that Defendant somehow was not subject to this corporate-wide policy, the Defendant's assertion that he held an objectively reasonable expectation of privacy in his office suite located on corporate property is totally unfounded and unsupported, and his argument fails.

C. Consent

_____Defendant further argues that the consent to search was invalid because it lacked proper authority. The consent in this case was given by third parties, who were HealthSouth attorneys. The Government has the burden of proving the consent was properly authorized. See *Schneckloth*, 93 S. Ct. at 2045. The Government has raised a presumption that the challenged search was conducted with consent from authorized agents of HealthSouth Corporation by its submission of the affidavits of the HealthSouth attorneys involved (Gov't Exs. 5, 6, 7, 12) and their signed written consent to the search (Gov't Ex. 3).

---

[6] The Defendant cannot reasonably argue, and indeed has not argued, that he was unaware of these policies. Both policies state clearly on their faces that the policies apply to *all employees.* See, Findings of Fact above. Defendant, however, does argue that waiver of Fourth Amendment privacy rights must be affirmatively made. The Government did not prove that Mr. Scrushy signed such a waiver. Because of this lack of proof, the Defendant asserts that the policy did not apply to him. His reliance on this argument is misplaced. The application of the corporate policy to the Defendant does not rise or fall upon the existence or nonexistence of his signature on a waiver of his Fourth Amendment rights. The questions are whether the published documents established the corporate policy and whether the Defendant had notice of the policy.

-12-

The Government must meet two criteria for a third-party consent to search to be Constitutionally valid.  First, the third-party must have actual or apparent authority to consent to the search.  *Stoner v. California*, 376 U.S. 483, 84 S. Ct. 889, 11 L. Ed. 2d 858 (1984).  Second, the third-party's consent must be voluntary.  *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S. Ct. 1788, 1791, 20 L. Ed. 2d 797,802 (1968).  The Government bears the burden of proving both the existence and voluntariness of consent.  *United States v. Blake* 888 F.2d 795, 798 (11th Cir. 1989).[7]

_____Third party consent to search property owned or occupied by a prospective defendant may be obtained from another person who possesses "common authority over or other sufficient relationship to the premises or effects sought to be inspected." *Matlock*, 415 U.S. at 171, 94 S. Ct. at 993; *see also, Coolidge v. New Hampshire*, 403 U.S. 443, 487-90, 91 S. Ct. 2022, 2048-50, 29 L. Ed. 2d 564 (1971).  Additionally, the party claiming an expectation of privacy must have assumed the risk that consent might be granted by this other person or entity.  *Matlock*, 415 U.S. at 171, n. 7.  The court must make a factual inquiry regarding access, use, and reasonable expectations of the parties.

---

[7] In its opposition to the Defendant's Amended Motion to Suppress, the Government argued that it could establish both authority and voluntariness through the use of affidavits. (See Doc. 336).  The court rejected the contention that the burden could be satisfied in that fashion.  Assuming only that the affidavits established a *prima facie* showing, the Defendant was permitted to call the affiants and examine these witnesses with a wide latitude in the questioning.  At a pretrial conference, the Defendant suggested that he would produce evidence of "coercion" related to the question of voluntariness.  He did not do so, but he did offer evidence that HealthSouth, the corporate entity, was "on the bubble," which meant that the company was subject to possible indictment.  This evidence is not probative of coercion.  The Defendant simply presented no evidence to rebut the Government's evidence to suggest that the consent was voluntary.

The record shows that, with knowledge of this search policy and under no coercion, William Horton, General Counsel to HealthSouth, directed attorneys for the corporate entity HealthSouth–Richard Beckler, Joseph Walker, and Jack Selden–to cooperate fully with the Government in its investigation of the HealthSouth premises. The Defendant also argues that the HealthSouth attorneys lacked the actual authority to consent to the search of his office space and computer because the Fulbright & Jaworski attorneys did not represent the Defendant individually.  Defendant gave approval of HealthSouth's employing the Fulbright & Jaworski attorneys to represent the corporation beginning in the summer of 2002.  These attorneys were still so employed on March 20, 2003.  The corporation through its executive vice-president for legal affairs directed these attorneys to cooperate with the Government including executing the consent to search the fifth floor office suite.  The issue is not whether the attorneys represented the Defendant, but whether they represented the entity consenting to the search and whether that entity had common authority over the HealthSouth premises and its contents, including the contents of computers and other equipment.  That the attorneys did not represent the Defendant individually has no bearing on whether, as counsel to HealthSouth, they could appropriately execute HealthSouth's policy and authorize the search of the corporate premises.

With Defendant's knowledge of the corporation's published policy of authority to search, Horton's authority as HealthSouth's General, and Horton's voluntary direction to HealthSouth's attorneys being clearly established in the record, the issue becomes whether Defendant's history of successful limitation of access by others to his work spaces can, as a matter of law, trump the corporation's authority to give third-party

consent.  It cannot.  See, *Matlock*, 415 U.S. at 171, 94 S. Ct. at 993; *Bumper*, 391 U.S.

at 548, 88 S. Ct. at 1788; *Blake*, 888 F.2d at 798.

A policy or regulation may provide the underlying authority for an employer to

consent to the search of the work space of an employee by others, particularly when

that search is related to workplace materials.  See *Matlock*, 415 U.S. at 171 n.7, 94 S.

Ct. at 933; *Bumper*, 391 U.S. at 548;  *Blake*, 888 F.2d at 798.  Under its published

policy of which Defendant was aware, HealthSouth had the right to conduct the

inspection in its own right, and Defendant, as an employee of HealthSouth, assumed

the risk that HealthSouth might permit such a search to be conducted by others, just as

all other HealthSouth employees did.

The HealthSouth policy expressly authorized the corporation, and by extension

its authorized representatives, to conduct a search, inspection, and examination of any

employee's work space, computer, and desk.  In the case at bar, HealthSouth expressly

authorized its attorneys to consent to such a search.  The evidence establishes that the

attorneys executed the consent without coercion.  Accordingly, the court finds

HealthSouth, the consenting third party, through its counsel, had the actual authority to

consent to the March 20, 2003, search.

_____Alternatively, the court finds apparent authority existed.  A warrantless search

predicated upon the consent of a third-party lacking actual authority over the premises

at issue may nonetheless be valid under the Fourth Amendment if law enforcement

officials reasonably believed that the consenting party had the authority to consent to

the search.  *Illinois v. Rodriguez*, 497 U.S. 177, 188-89; *United States v. Fernandez*, 58

F.3d 593, 597 (11th Cir. 1995). "To establish that a third party had apparent authority to consent . . . the government need demonstrate only that the officers reasonably believed that the third party was authorized to consent." *United States v. Gonzales*, 121 F.3d 928, 938 (5th Cir. 1997)(citing *Rodriguez,* 497 U.S. at 188, 110 S. Ct. 2793). The "determination of consent to enter must be judged against an objective standard: would the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?" *Rodriguez*, 497 U.S. at 188, 110 S. Ct. at 2801 (citing *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 20 L. Ed. 2d 889(1968)).

Here, the vice-president of legal affairs of a company, acting in conformity with a corporate decision to cooperate with a Government investigation, authorized counsel hired to represent the corporation, himself experienced in parallel SEC and Department of Justice investigations, to continue to adhere to an existing posture of cooperation. This counsel did so by executing a consent to search corporate premises pursuant to a valid, published business policy related to work place privacy.

Defendant makes a creative argument that, because the Government's representatives in obtaining the consent were attorneys, that a higher standard of reasonableness in a Fourth Amendment context should apply to the apparent authority issue. The Defendant presented no legal basis for this position, nor has the court found any, that would raise this threshold. The Government agents and attorneys correctly relied upon the apparent authority of HealthSouth to consent to the search. That

reliance was constitutionally reasonable. See, *Rodriguez*, 497 U.S. at 188, 110 S. Ct. at 2801, 111 L. Ed. 2d at 161.[8]

For these reasons, the Defendant's motions to suppress evidence obtained in the search of his office at HealthSouth headquarters on March 20, 2003, pursuant to the consent of HealthSouth attorneys must be DENIED.  A separate Order denying Defendant's Motion to Suppress (doc. 243) and Amended Motion to Suppress Evidence (docs 318) shall be entered contemporaneously.

**DONE and ORDERED** this 20th day of January 2005.

*Karon O. Bowdre*

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

---

[8] At the evidentiary proceeding, one of HealthSouth's attorneys, Mr. Walker, noted that HealthSouth consented to the search to the fullest extent it was authorized to do so, but that he also told one of the Government's lawyers that the Defendant's Fourth Amendment rights might be subject to litigation.  This statement does not imply a lack of authority, but rather relates to the legal realities of criminal law.  Moreover, Walker also acknowledged the scope of HealthSouth's authority.  To the extent that HealthSouth could not authorize a search or seizure, HealthSouth did not claim that it could.  As a matter of law and fact and as found herein, HealthSouth's authority extended to all areas searched, and the Defendant's Fourth Amendment claim fails.  Walker merely predicted Defendant would challenge the search, as he indeed did.