**FILED**

2005 Feb-09  PM 04:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| RICHARD M. SCRUSHY, | ) | CR-03-BE-0530-S |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MIKE WALLACE AND ROBERT ANDERSON'S MEMORANDUM OF LAW IN**
**SUPPORT OF THEIR EMERGENCY MOTION FOR RELIEF FROM ORDERS**
**CONCERNING POTENTIAL WITNESSES**

Non-parties Mike Wallace and Robert Anderson, both *60 Minutes* journalists,

respectfully submit this memorandum of law in support of their emergency motion to be relieved

from (1) the Protective Order entered by this Court on April 13, 2004 and (2) the Order entered

pursuant to Fed. R. Evid. 615 on December 16, 2004 (hereinafter "the Orders").

**PRELIMINARY STATEMENT**

This Motion is submitted to cure the coincidental effect of two Orders previously entered

by the Court concerning speech and information-gathering by potential witnesses.  Because these

journalists have been subpoenaed by the Defendant and their motion to quash remains pending,

the Orders would appear to apply to them and effectively bar them from reporting about these

proceedings while that motion remains pending.  As applied to them, the orders are therefore

unconstitutional prior restraints on their ability to gather and report news about these

proceedings.

We have no reason to believe that the Court (or indeed the parties) ever intended the

Orders to operate as prior restraints on any journalists.  In any event, because these Orders may

not be applied to these journalists as a matter of law, we respectfully request that this Court enter a further order relieving Mr. Wallace and Mr. Anderson from any obligations those Orders would otherwise impose on them.  We further request that the Court act on this emergency motion on an expedited basis.  The law is clear that each day an unconstitutional prior restraint remains in force constitutes irreparable injury and courts must therefore move rapidly to dissolve such restraints.

## STATEMENT OF FACTS

On April 13, 2004, this Court issued an Order by consent of the parties restraining extrajudicial speech by "all participants including potential witnesses in this case."  The Order bars potential witnesses from "making or authorizing extrajudicial comments and disseminating or authorizing the dissemination of information to the media and the public" concerning a number of matters, including "the character, credibility [and] reputation" of any party or witness, "the expected testimony of a party or witness", or "any opinion as to the guilt or innocence of the defendant."  *United States v. Scrushy,* 2004 U.S. Dist. LEXIS 6711, at *18-19 (N.D. Ala., Apr. 13, 2004).

On December 16, 2004, this Court entered a further Order concerning sequestration of witnesses.  The order bars potential witnesses from, among other things, "discussing the testimony of other witnesses", "read[ing] transcripts of other witnesses testimony" and "read[ing] newspapers, listen[ing] to radio programming or view[ing] television programming discussing or addressing the trial of this matter."  Both Orders also required counsel to provide copies of the Orders to their potential witnesses.

On late November, 2004, the Defendant issued trial subpoenas that were subsequently served upon Mike Wallace and Robert Anderson, the reporter and producer of a *60 Minutes*

2

report about this case that was first broadcast on October 12, 2003 and re-broadcast on August 22, 2004.  On December 30, 2004, Wallace and Anderson filed a joint motion to quash their subpoenas, which remains pending.  Neither counsel for the Defendant nor anyone else ever provided a copy of either of these Orders to these journalists or otherwise made them or their counsel aware of their existence.  Counsel for the journalists learned of their existence only recently in the course of reviewing the docket.  As applied literally to Wallace and Anderson, the Orders effectively restrain them from engaging in any reporting about these proceedings.  For example, they may not learn or report about any witness testimony, comment about the participants or follow any media reports to keep their knowledge about this matter current.[1]

## ARGUMENT

Below we set forth why these Orders constitute unconstitutional prior restraints as applied to these journalists that must be lifted immediately.  Preliminarily, however, we note that these Orders were neither requested nor entered for the purpose of restraining the speech of these or any other journalists.  When the Court issued its April 13, 2004 Order these journalists had not been subpoenaed and the Order specifically noted that "neither party seeks a restraining order directed to the media." 2004 U.S. Dist. LEXIS 6711, at *2.   When the Court issued its December 16, 2004 Order, these journalists had been subpoenaed by counsel for the Defendant, but no one brought that fact to the attention of the Court.

Moreover, had the Court intended to impose that Order on these journalists it would surely have worded it differently because, read literally, the December 16 Order bars them from reviewing their own news report even though that is the reason defense counsel subpoenaed them.  Nor did defense counsel bring these Orders to the attention of these journalists, suggesting

---

[1] Counsel for these journalists attempted to secure the consent of both parties to the relief sought in this motion before filing it, but was unsuccessful.

that it also never occurred to counsel that these Orders might technically apply to them. Nevertheless, because these journalists are technically "potential witnesses" in this matter until such time as the Court may grant their motion to quash their subpoenas, the Orders would appear to apply to them. Therefore, Mr. Wallace and Mr. Anderson bring this motion out of an abundance of caution to address what would appear to be their unintended effect as applied to them.

**A.      The Orders Are Prior Restraints as Applied to These Journalists**

As applied to these journalists, the Orders directly restrain their ability to gather and report news. As a result, they are "classic examples of prior restraints," *Alexander v. United States*, 509 U.S. 544, 550 (1993). *See also In re Dow Jones & Co.,* 842 F.2d 603, 609 (2d Cir. 1988) ("a gag order challenged by the individual gagged . . . . is properly characterized as a prior restraint"). As this Court has noted, a "prior restraint against the media's First Amendment rights…would be faced with a more stringent legal standard" than the Court applied when entering the Orders in question. *Scrushy,* 2004 U.S. Dist. LEXIS 6711, at *2.

Indeed, the Supreme Court has emphasized in the context of considering a gag order on the press issued in a criminal trial that "prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). As a result, any prior restraint carries "a heavy presumption against its constitutional validity." *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971) (citations omitted); *The News-Journal Corp. v. Foxman*, 939 F.2d 1499, 1512 (11th Cir. 1991). In fact, the Supreme Court has to date never approved a prior restraint directed at the press. *See Oklahoma Publ'g Co. v. District Ct.*, 430 U.S. 308 (1977); *Nebraska Press Ass'n*, 427

4

U.S. at 559; *New York Times Co. v. United States*, 403 U.S. 713 (1971); *Near v. Minnesota*, 283 U.S. 697 (1931).[2]

**B.     The Extraordinary Nature of a Prior Restraint Requires Expedited Consideration of this Motion**

"It is clear that even a short-lived 'gag' order in a [criminal] case of widespread concern to the community constitutes a substantial prior restraint and causes irreparable injury to First Amendment interests as long as it remains in effect." *Capital Cities Media, Inc. v. Toole*, 463 U.S. 1303, 1304 (1983) (Brennan, J., in chambers). *See also Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Thus, courts have an obligation to act as quickly as possible in the face of a motion to vacate a prior restraint entered against the press. *See, e.g., CBS Inc. v. Davis*, 510 U.S. 1315 (1994) (Blackmun, J., in chambers); *Capital Cities Media*, 463 U.S. at 1304; *Times-Picayune Publ'g Corp. v. Schulingkamp*, 419 U.S. 1301 (1974) (Powell, J., in chambers) (all issuing immediate stays of prior restraint orders). Justice Blackmun explained why prompt action to vacate a prior restraint is particularly appropriate:

> Where . . . a prior restraint is imposed upon the reporting of news by the media, each passing day may constitute a separate and cognizable infringement of the First Amendment. The suppressed information grows older. Other events crowd upon it. To this extent, any First Amendment infringement that occurs with each passing day is irreparable.

*Nebraska Press Ass'n*, 423 U.S. at 1329 Blackmun, J., in chambers). *See also In re Providence Journal Co.*, 820 F.2d 1354, 1355, (1st Cir. 1987) (en banc) (a party would be justified in violating a "transparently unconstitutional" prior restraint if emergency judicial review is not afforded).

---

[2] The Eleventh Circuit has on one occasion affirmed a temporary prior restraint in a case involving highly unusual facts that have no relationship to those presented here. In *United States v. Noriega*, 917 F.2d 1543 (11th Cir. 1990), CNN obtained tape recordings of what may have been privileged conversations between the Defendant and his attorney. The Court affirmed an order requiring CNN to provide the district court with copies of the tapes and refrain from broadcasting them only for the short period of time required for the trial court to consider the merits of a defense motion to enjoin their broadcast.

We recognize that the Court is in the middle of a busy trial and has many matters pressing upon it. Nevertheless, the issues raised by this motion are sufficiently serious and immediate to justify immediate, expedited consideration.

**C.    The Orders May Not Be Applied to These Journalists as a Matter of Law**

The Supreme Court has made clear that when faced with a request for a prior restraint a court must be able to make specific, stringent findings sufficient to justify "one of the most extraordinary remedies known to our jurisprudence." *Nebraska Press,* 427 U.S. at 562. *See also CBS v. United States Dist. Ct.*, 729 F.2d 1174, 1178 (9th Cir. 1984) ("This standard is an extraordinarily exacting one"). Since a court must at a minimum find a "substantial likelihood of material prejudice" to a fair trial to justify an order limiting speech by trial participants that is not directed at the media, 2004 U.S. Dist. LEXIS 6711, at*10, any order directed at reporters would require a more stringent showing that a fair trial will certainly and immediately be threatened. *Nebraska Press*, 427 U.S. at 569 (showing must be made "with the degree of certainty our cases on prior restraint require"); *United States v. Carmichael*, 326 F. Supp. 2d 1267, 1294 (M.D. Ala. 2004) (even a gag order challenged by a party requires a specific finding that the party's speech "poses a serious and imminent risk to the court's ability to conduct a fair trial"). Indeed, one federal court of appeals has noted that "when, as here, the prior restraint impinges upon the right of the press to communicate news and involves expression in the form of pure speech -- speech not connected with any conduct -- the presumption of unconstitutionality is virtually insurmountable." *In re Providence Journal Co.*, 820 F.2d 1342, 1348 (1st Cir.), *modified on reh'g by* 820 F.2d 1354 (1986), *cert. dismissed,* 485 U.S. 693 (1988).

Regardless of the exact formula a court might choose, however, plainly no credible showing can be made that (1) further reporting by these journalists would pose any imminent

threat to the fairness of this trial and (2) there are no less extreme measures to protect this trial the Court could take. *Procter & Gamble Co. v. Bankers Trust Co.,* 78 F.3d 219, 225 (6th Cir. 1996) (citing *Davis*, 510 U.S. at (1317), (Blackmun, J., in chambers)) (a prior restraint may be considered "only where the evil that would result from the reportage is both great and certain and cannot be militated by less intrusive measures."). The only reason these reporters are arguably subject to the Orders is that defense counsel issued subpoenas to them. That fact hardly constitutes evidence that their speech could seriously threaten this trial. Otherwise, a lawyer could impose the extraordinary measure of at least a temporary prior restraint on any reporter merely by issuing a subpoena in any case containing a standing order limiting the extrajudicial speech of trial participants.

The common-sense conclusion that a court may not merely apply a standing order restricting speech to a reporter-potential witness was highlighted in the underlying facts at issue in *The News-Journal Corp. v. Foxman*, 939 F.2d 1499 (11th Cir. 1991). In that case, the defendant in the state court proceeding at issue sought a broad gag order restricting extrajudicial statements by trial participants, but the state court judge was aware that one or more reporters might be subpoenaed in the case. *Id.* at 1504-05. The judge issued the gag order, but specifically excluded any reporters that might be subpoenaed because "[t]o include the reporters would involve First Amendment considerations that the Court is not prepared to deal with at this time." *Id.* at 1505. The same logic applies equally to this case.

Finally, the invalidity of these Orders as applied to these reporters would exist whether or not the Court grants their pending motion to quash. The mere fact that these journalists might in theory be called to testify about a prior interview with the Defendant does not make any subsequent reporting by Mike Wallace or Robert Anderson likely to pose a serious threat to the

7

fairness of this trial.  The news report that is the subject-matter of any testimony they could conceivably offer had already been broadcast when the Court entered its Order dated April 13, 2004 Order, yet that Order contains no suggestion that any restraint on further reporting by these journalists would be necessary to conduct a fair trial.  Indeed, it would seem paradoxical to conclude that their reporting would certainly and imminently poison the trial when the predicate for subpoenaing them is that the jury may be permitted to view their news report.

With regard to the Order dated December 16, 2004, we respectfully submit that any interests promoted by orders governing sequestration of witnesses do not even arguably rise to the level of the imminent threat to fair trial rights required to justify a prior restraint on a journalist.  The only interest that courts have even hypothesized as justifying such direct restraints on reporting would be the certain inability to empanel an impartial jury as a result of pervasive pre-trial publicity.  *Nebraska Press*, 427 U.S. at 569-70.  The jury in this matter has already been empanelled and there could be no plausible contention that continuing to monitor and report about this case would so influence these journalists' potential testimony about their prior news report as to render this trial unfair.

The recent case of *United States v. Gotti*, 2004 U.S. Dist. LEXIS 24192 (S.D.N.Y. Dec. 3, 2004), illustrates just how stringent a showing would be required to justify restrictions on the speech of a journalist-witness.  That case involved the highly unusual situation where the host of news radio talk program was also the victim and principal prosecution witness in a high-profile attempted murder trial.  Moreover, the talk show host regularly used his radio program to "comment[] repeatedly on the merits of the case" against the defendant, John Gotti, Jr.  *Id.* at *3- 4.

Nevertheless, even though the court found that the substance of those comments could prejudice the upcoming trial, the court denied the defendant's request for a gag order that would have imposed on the host the same restrictions on speech applicable to attorneys. It found that such an "extraordinary measure" was not necessary to insure a fair trial. *Id.* at *18. If restrictions on a journalist-witness were not justified on the extraordinary facts of *Gotti*, they cannot possibly be justified on the routine facts at issue here.

In fact, the subpoenas do not justify subjecting these journalists to the Orders; rather, the Orders further underscore why the subpoenas should be quashed. If any serious question could be raised about the application of these Orders to them, the appropriate solution would be to quash the subpoenas immediately to release these reporters from any prior restraint. As discussed in the pending motion to quash, any subpoena to reporters infringes upon well-established First Amendment interests and these subpoenas are no exception. If in addition to those existing concerns these subpoenas could further subject these reporters to "the most serious and least tolerable infringement" of their First Amendment rights imaginable, then any scant value their testimony might plausibly offer is far outweighed by the damage to First Amendment interests enforcing these subpoenas would impose.

## CONCLUSION

For the foregoing reasons, Mike Wallace and Robert Anderson respectfully request that they be immediately relieved from the Court's Orders dated April 13, 2004 and December 16, 2004. Movants further request expedited consideration of this Motion.

Respectfully submitted,

_____/s/ J. Banks Sewell III_____
One of the Attorneys for
Mike Wallace and Robert Anderson

9

OF COUNSEL:

J. Banks Sewell, III (SEW003)
Terry W. McCarthy (MCC119)
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, Alabama  35203
(205) 581-0700
(205) 581-0799 (fax)

Lee Levine
Nathan E. Siegel
LEVINE SULLIVAN KOCH & SCHULZ LLP
1050 Seventeenth Street, N.W., Suite 800
Washington, DC  20036
(202) 508-1100

## CERTIFICATE OF SERVICE

      I hereby certify that I have on this 9th day of February, 2005, served the foregoing upon counsel of record for all parties to this proceeding, by placing a copy thereof in the United States Mail, first-class postage thereon prepaid and properly addressed as follows:

Arthur W. Leach, Esq.
2310 Marin Drive
Birmingham, Alabama 35243

James W. Parkman, III, Esq.
R. Martin Adams, Esq.
739 West Main Street
Dothan, Alabama 36301

Alice H. Martin
James D. Ingram
Tamarra Matthew Johnson
US Attorney's Office
1801 4th Avenue North
Birmingham, AL 35203-2101

Joshua R. Hochberg
Richard C. Smith
Richard N. Wiedis
Mary Katherine Dimke
Nathaniel B. Edmonds
US Department of Justice
Criminal Div., Fraud Section
1400 New York Avenue NW, Suite 1400
Washington, DC 20503

_/s/ J. Banks Sewell III_
Of Counsel