FILED
2005 Apr-15 PM 07:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Case No. CR-03-BE-0530-S |
| RICHARD M. SCRUSHY, | |
| Defendant. | |

### DEFENDANT RICHARD M. SCRUSHY'S MOTION TO COMPEL COMPLIANCE WITH RULE 17(c) SUBPOENA TO HEALTHSOUTH AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS CLAIMED TO BE PRIVILEGED

COMES NOW Defendant Richard M. Scrushy, by and through undersigned counsel, and files this "Motion To Compel Compliance With Rule 17(c) Subpoena and Motion To Compel Production of Documents Claimed To Be Privileged." Defendant respectfully requests that this Court enter an Order compelling HealthSouth to comply with HealthSouth Subpoena Number Twelve and that HealthSouth provide documents included on a "privilege log" associated with previous productions related to HealthSouth Subpoenas Numbers One through Eleven. In support of this request, Defendant respectfully shows this Court the following:

1. On December 28, 2004, the Defendant served nine (9) Rule 17(c) subpoenas on HealthSouth Corporation. These nine subpoenas are identified as HealthSouth Subpoenas Numbers One through Nine. On February 10, 2005, HealthSouth Subpoena Number Ten was served on HealthSouth. On March 7, 2005, HealthSouth Subpoena Number Eleven was served on HealthSouth.

2. On January 5, 2005, HealthSouth filed "HealthSouth's Objections to and Motion to Quash or Modify Subpoenas" that related to the original nine subpoenas. (Document 360.) At the direction of the Court, HealthSouth's counsel and counsel for Defendant met to discuss a timeline for production of documents in response to the original nine subpoenas. At this meeting, counsel for Defendant requested, and HealthSouth counsel agreed, that they would maintain a "privilege log" that could be reviewed by Defendant's counsel and the Court if necessary.

3. On March 21, 2005, Defendant's counsel sent an e-mail to HealthSouth's counsel requesting the "status" of the "privilege log." (See Attachment A.)

4. On March 25, 2005, the Defendant served a Rule 17(c) subpoena (identified as HealthSouth Number Twelve) on HealthSouth Corporation returnable on April 4, 2005. The subpoena detailed the requested documents to include "Any and all Term Sheets and Confidentiality Agreements for each acquisition from 1994 through 2003. Any and all documents and files for the failed Bally's acquisition." (See Attachment B.)

5. On April 2, 2005, counsel for Defendant received a letter from HealthSouth Counsel advising that HealthSouth would not comply with the Rule 17(c) subpoena identified as "HealthSouth Number Twelve." In this letter from HealthSouth's counsel, HealthSouth argues that the language of the subpoena is overbroad and burdensome. In addition, HealthSouth argues that the subpoena does not meet the relevance and specificity requirements pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure. (See Attachment C.)

6. On April 7, 2005, counsel for Defendant sent another e-mail to HealthSouth's counsel requesting compliance with the Rule 17(c) Subpoena (HealthSouth Subpoena

Number Twelve) as well as another request for the production of a "privilege log." (See Attachment D.)

7. On April 7, 2005, HealthSouth's counsel responded to the April 7, 2005 e-mail set forth in paragraph six, *supra*. In its response, HealthSouth advised that they were completing the "privilege log" and they should be able to deliver it by the next day, April 8, 2005. (See Attachment E.) This e-mail made no mention of HealthSouth's willingness to comply with HealthSouth Subpoena Number Twelve.

8. On April 12, 2005, counsel for Defendant received a letter along with an eight-page document titled "HealthSouth Corporation: Attorney Work Product and Attorney Client Privilege Log" from HealthSouth's Counsel (hereafter identified as "Privilege Log"). (See Attachment F.) The Privilege Log contains entries for 119 documents that consist primarily of "handwritten attorney notes from interviews." These interviews include employees of HealthSouth as well as individuals that are not employees of HealthSouth. Additionally, the Privilege Log reveals that HealthSouth attorneys participated in interviews of co-conspirators even after they were no longer employees of HealthSouth, such as the interview of Bill Owens on May 22, 2003. (See Attachment F at pg. 2, line 14.)

9. <u>HealthSouth Subpoena Number Twelve.</u> This subpoena requests documents with sufficient specificity and that are both relevant and admissible. There has been inconsistent testimony that in 1997, the CMS/Horizon acquisition was utilized to hide in excess of $400 million dollars of the fraud. There were numerous other acquisitions during the same time period. These acquisitions are important issues in this case which would have generated considerable documentation. Additionally, the concealment of the

fraud by the co-conspirators is a crucial issue in this case and these supporting documents are clearly evidentiary, relevant and admissible to the Defendant's defense against these charges.

10. Subpoenas issued in criminal cases pursuant to Fed. R. Crim. P. 17(c), are subject to the three-part test found in United States v. Nixon, 418 U.S. 683, 699-700, 94 S.Ct. 3090 (1974). The documents must be relevant, admissible, and requested with specificity. Id. at 700. An analysis of the application of the Rule 17(c) requirements is found in a complex fraud prosecution where the defendant, a Coopers and Lybrand partner, had been indicted for defrauding his partnership. United States v. Caruso, 948 F.Supp 382 (D.N.J. 1996). In Caruso, the defendant sought pretrial production of documents described as:

> Finally, the defendant has moved to compel the production of documents from C & L pursuant to a Fed.R.Crim.P. 17(c) subpoena, and C & L has cross-moved for an order quashing that subpoena. Under the subpoena, the defendant seeks, for the years 1987 through the present:
>
> 1. All documents concerning [C & L's] policies and practices regarding partner relocation, subsidies paid in lieu of relocation, and reimbursement to partners or others in connection with partner relocation....
>
> 2. All documents concerning reimbursement and subsidy payments made as a result of the relocation of [the names of several individuals are omitted.]
>
> 3. All documents concerning [C & L's] policies and practices with respect to the authority of managing partners within their area of geographic responsibility, including but not limited to documents concerning managing partners' authority to make decisions regarding charitable contributions and accounting therefore, office expenses, the discounting of bills, and other subjects as to which managing partners had decision making responsibility.

4

Caruso, 948 F.Supp. at 396.  After analyzing Nixon, 418 U.S. 683, and United States v. Cutherbertson, 630 F.2d. 139, 144 (3d Cir. 1980), the Caruso court held:

> After reviewing the subpoena pursuant to these standards, I have concluded that the defendant is entitled to the documents he seeks. First, the documents are clearly evidentiary, relevant, and admissible. The defendant claims, based upon his first hand knowledge as managing partner at C & L, that the documents will demonstrate a variance between policy and actual practice at C & L with regard to, inter alia, partner relocation. The defendant contends that his actions in this case were in accord with C & L's actual practices and that he therefore did not possess criminal intent when he engaged in the activities charged in the indictment. Therefore, the defendant claims that the documents he seeks are critical for his preparation of a defense in this case.
>
> I am persuaded by the defendant's explanation. The documents are relevant to establishing the defendant's state of mind at the time of the offense, and as such would be admissible at trial. Moreover, as the defendant claims, such material regarding C & L's practices and customs would be admissible at trial pursuant to Federal Rule of Evidence 406. Accordingly, I find that the defendant's subpoena meets the first element of the Nixon test.
>
> I am not persuaded by C & L's argument that the subpoena is overbroad because the defendant seeks documents for years in which no fraudulent acts are alleged. C & L points out that the charges in the indictment extend to acts which occurred only until July 6, 1990. Drawing on this point, C & L claims that the documents from years post-dating 1990 could not possibly have any relevance to the defendant's case. Accordingly, C & L requests this court to quash the subpoena.
>
> I will reject this argument because contrary to C & L's claims, the indictment actually alleges fraudulent conduct by the defendant up through and including 1993. Furthermore, I find that C & L's policies and procedures post-dating 1993 up until the present are relevant to a determination of whether C & L employed a practice or pattern of deviating from official policy. Therefore, C & L's argument on this point is rejected as unpersuasive.

Caruso, 948 F.Supp. at 397-398.

5

11. <u>Waiver of Privilege.</u> HealthSouth is claiming that the materials listed in the Privilege Log are "protected by the attorney-client privilege and work product doctrine." On information and belief, and as the Government contended repeatedly in its responses to Defendant's Motion to Suppress Evidence in arguing that the documents seized from Defendant's office would or could have inevitably been obtained from HealthSouth, HealthSouth has cooperated with the Government in its investigation of Defendant Scrushy. Unless HealthSouth can demonstrate to this Court that it has not waived its privilege by voluntary disclosure of the subpoenaed documents or by entering into a waiver of the attorney-client privilege and work product protections by the corporation,[1] there is no valid claim based on either. Once waived by disclosure, both protections are gone. <u>In re Columbia/HCA Healthcare Corporation Billing Practices Litigation</u>, 293 F.3d 289, 304, 307 (6th Cir. 2002) (rejecting selective waiver argument and concluding that once corporation waives attorney-client privilege and work product protection by voluntary disclosure to Government, waiver of both protections is "complete and final"); <u>Martin Marietta Corp. v. Pollard</u>, 856 F.2d 619 (4th Cir. 1988) (holding that corporation's prior disclosures to Government in attempt to settle criminal investigation against company constituted waiver of attorney-client privilege and nonopinion work-product privilege); <u>United States v. Bergonzi</u>, 216 F.R.D. 487 (N.D.Calif. 2003) (attorney-client privilege and work product protection waived by voluntary production to Government).

---

[1] <u>See</u> "The Thompson Memorandum," United States Attorneys' Manual, Title 9, Criminal Resource Manual § 162, Federal Prosecution of Business Organizations, § VI. Charging a Corporation: Co-operation and Voluntary Disclosure: "One factor the prosecutor may weigh in assessing the adequacy of a corporation's cooperation is the completeness of its disclosure including, if necessary, a waiver of the attorney-client and work product protections, both with respect to its internal investigation and with respect to communications between specific officers, directors and employees and counsel."

6

Documents listed in the Privilege Log were requested in the subpoenas identified as HealthSouth Subpoenas Numbers One through Nine, to include any reports or memoranda resulting from internal investigations conducted by any person or law firm which has been shared with the Department of Justice or the SEC. Once the report or statement has been turned over to any party outside of the attorney client relationship then the attorney client privilege is waived, as is the work product privilege. The underlying statements of witnesses would be admissible under Fed. R. Evid. 804(3) as a statement against interest for those witnesses who are unavailable because they assert their Fifth Amendment privilege. If the declarant does testify, then the statements would be admissible to impeach the witness at trial. Additionally, these subpoenas seek memos, correspondence, e-mails or other communications from HealthSouth management to HealthSouth employees which would make employees fear for retaliation if they communicate with investigators or attorneys representing Defendant. No party "owns" witnesses. It is unethical to discourage employees from communication with investigators or lawyers for Defendant Scrushy. At a minimum, such communications would be admissible to show motive and bias on the part of the witness, i.e., their fear of retaliation. In the Caruso case cited above, the court based its ruling in part on the acknowledgement by Coopers and Lybrand's lawyers that the company was directing its employees not to confer with the defense. Caruso, 948 F.Supp. at 398.

    13. HealthSouth has engaged in a pattern of delays to the production process as it relates to the subpoenas issued to them on behalf of Defendant. After more than thirteen weeks of trial and the testimony of numerous HealthSouth employees and co-conspirators, HealthSouth now provides a Privilege Log indicating that there are

interviews of individuals that they have failed to provide to the defense. Such documents were essential to the cross-examination of these witnesses, and should have been made available to Defendant in a timely manner so as not to interfere with Defendant's Sixth Amendment right to cross-examination. With this recent revelation that HealthSouth possesses "notes from interviews" of co-conspirators directly involved in the fraud, Defendant is forced into a position that will require the recalling of witnesses that have already testified. This will prejudice Defendant and result in unnecessarily prolonging the trial.

For the foregoing reasons, Defendant respectfully submits that this Court should enter an Order requiring HealthSouth to comply with Defendant's Subpoena Number Twelve as well as to provide the documents listed in "Attachment F," no later than April 18, 2005, and for such other and further relief as this Court may deem just and proper.

This  15th  day of April, 2005.

                                                Respectfully submitted,

                                                Arthur W. Leach
                                                2310 Marin Drive
                                                Birmingham, Alabama 35203
                                                (205) 822-4224

                                                Leslie V. Moore
                                                2310 Marin Drive
                                                Birmingham, Alabama 35203
                                                (205) 822-4224

                                                Attorneys for Richard M. Scrushy

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2005, a copy of the foregoing "Motion To Compel Compliance With Rule 17(c) Subpoena and Motion To Compel Production of Documents Claimed To Be Privileged" was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

Alice Martin
United States Attorney
Northern District of Alabama
U.S. Department of Justice
1801 4th Avenue North
Birmingham, Alabama  35203,

as well as the following attorneys for the Government:

Nathaniel B. Edmonds
James D. Ingram
Tamarra Matthews Johnson
Richard C. Smith
Richard N. Wiedis

Additionally the filing was sent via email to the following attorney for HealthSouth:

Jack W. Senden
jselden@bradleyarant.com

Leslie V. Moore
2310 Marin Drive
Birmingham, Alabama  35203
(205) 822-4224

Attorney for Richard M. Scrushy

9